# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOBBY FORD (#N-20126), | ) |
| Plaintiff, | ) |
| v. | ) No. 05 C 1780 |
| WARDEN CLARK et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials and health care providers at the Stateville Correctional Center, violated the plaintiff's constitutional rights by conducting abusive strip searches, by using excessive force against him (or by failing to intervene when a fellow officer used unjustified force), by acting with deliberate indifference to his serious medical needs, by subjecting him to cruel and unusual conditions of confinement, by bringing false disciplinary charges against him, and by making a sham of the grievance process, thereby interfering with his access to the courts. This matter is before the court for consideration of the plaintiff's motion for summary judgment. Although granted extensions of time giving them almost eight months to respond to the motion, the defendants missed their latest deadline to file a brief opposing summary judgment. For the reasons stated in this order, the plaintiff's unopposed motion is mostly granted.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

## FACTS

Because the defendants never responded to the plaintiff's Local Rule 56.1(a)(3) statement of material facts, the court finds the plaintiff's account of the facts giving rise to this action to be uncontested. *See, e.g., Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.") However, because the *pro se* plaintiff has unfortunately failed to provide a coherent statement of facts in connection with his summary judgment motion, the court gathers the following sequence of events from his complaint:

On July 19, 2004, the defendant Muys, an officer at the Stateville Correctional Center, handcuffed the plaintiff and told him to strip naked. Muys directed the plaintiff to bend over at the

waist and spread the cheeks of his buttocks for inspection. After the plaintiff complied, Muys ordered him to do so again, and then a third time.

At this point, believing that Muys was intentionally harassing and humiliating him, the plaintiff asked to speak to a lieutenant. In response, Muys tightened the plaintiff's handcuffs to such a degree as to cut off circulation. Muys then slammed the plaintiff into a concrete wall, causing severe injury to his shoulder, forcefully bent the plaintiff over by pulling his handcuffs upward in a painful manner, and then forced his gloved finger into the plaintiff's rectum, causing bleeding and swelling. Muys then kicked the plaintiff and left him, ignoring his requests for medical attention.

The plaintiff beat on his cell door until the defendant Robinson went to his cell to see what was the matter. After hearing what had happened, Robinson refused the plaintiff's request for medical attention and threatened to mace the plaintiff if he continued to kick the door. The plaintiff received no treatment until September 28, 2004.

On July 25, 2004, the plaintiff was placed in a "condemned" cell that had no lights and no running water. The cell was filthy and the floor was greasy. After the defendant Ruiz closed the chuckhole door, cutting out all light, the defendant Elberson refused to open it again. Because the cell was "pitch black," the plaintiff slipped and fell, injuring his left ear and spine.

On July 26, 2004, the defendants Elberson and Davis handcuffed the plaintiff and subjected him to another body cavity search. A never-identified medical technician inserted a finger in the plaintiff's rectum, causing pain and injury. The plaintiff was placed in another filthy segregation cell, his water was cut off, the mattress and toilet tissue were removed, and prison officials refused to feed the plaintiff. Davis and other officers looked in on the plaintiff and laughed at him on a number of occasions.

On October 28, 2004, the defendant Sanders assaulted the plaintiff for alleging taking too long in the shower and for stating that he intended to file a grievance against the officer. The defendants Kerl and Gibson watched Sanders kick and punch the plaintiff in his head, spine and ribs as he "screamed for mercy." Sanders then picked the plaintiff up and slammed his head and face into a concrete walk, breaking his nose. Only then did Gibson tell Sanders to stop hurting the plaintiff.

Afterwards, the officers forced the plaintiff to stand at attention for hours. Because the officers denied the plaintiff's repeated requests to use the bathroom, he soiled himself.

The defendant Barnes, a medical technician, examined the plaintiff but refused either to document his statements about what had transpired or to take the plaintiff to the health care unit for treatment of his injuries. Barnes also disclosed the plaintiff's HIV status to the officers.

Sanders issued the plaintiff a false disciplinary report following the incident. The defendant Martin ordered the plaintiff's placement in "punitive" segregation prior to a hearing. The Adjustment Committee found the plaintiff not guilty of the charges and ordered his release from segregation on November 6, 2004; nevertheless, the plaintiff remained in segregation until November 30, 2004.

The defendants have an unwritten practice, policy or rule of refusing to release disciplinary summaries and grievances until the filing time has expired, then either throwing them away or returning them to inmates as untimely. On November 13, 2004, the defendant Thompson rejected as untimely a grievance the plaintiff had properly filed.

## DISCUSSION

No material facts are in dispute, and the court concludes that the plaintiff is entitled to judgment as a matter of law on most of his claims.

Based on the plaintiff's uncontested facts, the court finds that the defendant Muys violated the plaintiff's constitutional rights with regard to the July 19, 2004, strip search. Although the courts have routinely upheld prison strip searches, *see, e.g., Bell v. Wolfish*, 441 U.S. 520 (1979); *Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994), they must be performed in a "reasonable," non-abusive manner. *Bell*, 441 U.S. at 560, *Del Raine*, 17 F.3d at 1040. In balancing the need for the search against the individual's privacy rights, the court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Del Raine*, 32 F.3d at 1039; *Burton v. Kuchel*, 865 F. Supp. 456, 466 (N.D. Ill. 1994); *U.S. v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000) (search incident to arrest). In this case, requiring the plaintiff to submit to an inspection of his anus three times, and for a non-medical professional to insert his finger into the plaintiff's rectum, was patently unreasonable. The plaintiff is entitled to damages on his claim that the strip search violated his constitutional rights.

The plaintiff may also recover against Muys for attacking him when the plaintiff protested about the invasive strip search. Correctional officers have the right to use reasonable force against a prison inmate to enforce discipline and to maintain institutional security. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, it is well settled that the intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment violative of the Eighth Amendment. *Id.*; *Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, at *6 (N.D. Ill. May 14, 2003 (Manning, J.).

Whenever correctional officials stand accused of using excessive physical force in violation of the Constitution, "the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *DeWalt v. Carter*, 224

5

F.3d 607, 619 (7th Cir. 2000), *quoting Hudson*, 503 U.S. at 6-7 (internal quotations omitted). In determining whether pain was unnecessarily and wantonly inflicted, the court must examine a variety of factors, including "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *quoting DeWalt, supra*, 224 F.3d at 619. In this case, under the unrefuted circumstances described by the plaintiff, Muys' gratuitous resort to violence violated the plaintiff's constitutional rights. For the same reasons, Sanders is liable for his alleged attack on the plaintiff on October 28, 2004.

The defendants Kerl[1] and Gibson must be held accountable for their failure to intervene. A correctional official is liable for a constitutional violation committed by another if he or she has a reasonable opportunity to intervene but fails to do so. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 744-78 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Another basis for recovery against Sanders, Kerl and Gibson is their *de facto* torture of the plaintiff, who was forced to stand at attention "for hours" even as he urinated and defecated on himself. "Physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

---

[1] Kerl appears to be in default. The court's docket reflects that the Marshal filed an executed return of service as to Kerl on January 24, 2006. However, Kerl has neither entered an appearance nor responded to the complaint.

The plaintiff may also recover against the defendants Robinson and Muys for ignoring his requests for needed medical attention. Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Again, accepting the plaintiff's account of his injuries as true, he is entitled to recover damages for the denial of necessary medical care. The plaintiff may recover against the defendant Barnes, too, for refusing to provide medical care after one of the alleged attacks.

The plaintiff may additionally obtain monetary damages from Ruiz, Elberson and Davis for his placement in a "condemned cell." The Eighth Amendment, through the Due Process Clause of the Fourteenth Amendment, requires state prison officials to maintain "humane conditions of confinement," including adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement implicate the Eighth Amendment when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). A plaintiff claiming a violation of the Eighth Amendment must satisfy both an objective test (whether the conditions can be considered cruel and unusual) and a subjective test (whether the defendants acted with a culpable state of mind). *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994).

Here, the plaintiff's allegations rise to the level of extreme deprivation required to establish an objective violation of the Eighth Amendment. Being placed in a filthy, pitch black cell that lacked running water–and being denied food in addition–are unconstitutional privations. *Compare Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.

7

1992) (objective component met where prison conditions were "so strikingly reminiscent of the Black Hole of Calcutta"). The plaintiff has also satisfied the subjective component in that the defendants were aware of his conditions and even laughed at him.

For all of the foregoing reasons, summary judgment is granted in favor of the plaintiff on the majority of his claims.

However, on the court's own motion, summary judgment is nevertheless granted in favor of the defendants Martin, Wright and Thompson. Based on the plaintiff's own statements, the court finds that those defendants are entitled to judgment as a matter of law. The court is permitted to grant summary judgment *sua sponte* as to non-movants if the losing party has proper notice that the court is considering granting summary judgment and the losing party has a fair opportunity to present evidence in opposition. *Acequia, Inc. v. Prudential Ins. Co. of America*, 226 F.3d 798, 807 (7th Cir. 2000); *see also Ramirez v. Elgin Pontiac GMC, Inc.*, 187 F. Supp.2d 1041, 1047 (N.D. Ill. 2002) (Norgle, J.) (the district court can grant summary judgment *sua sponte* provided that the substantive standard is met and that the nonmovant had adequate notice).

The plaintiff's only claim against Martin is that he ordered that the plaintiff be placed in segregation pending a hearing on disciplinary charges. However, "being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process." *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005), citing *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003). An inmate has no due process liberty interest in remaining free from administrative segregation because such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Montgomery v. Anderson*, 262 F.3d 641, 643 (7th Cir. 2001). An

inmate has no liberty interest in remaining in the general prison population. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

In *Williams*, 71 F. 3d 1246, 1249-50 (7th Cir. 1995), the Court of Appeals for this circuit held that conditions in the segregation unit at Stateville "do not greatly exceed what one could expect from prison life generally," and that the plaintiff had no liberty interest in avoiding confinement there. Courts in this district have consistently held that confinement in segregation in an Illinois prison, under conditions prescribed by Illinois Department of Corrections regulations, is not an atypical and significant deprivation in relation to the ordinary incidents of prison life. *See, for example, Leslie v. Doyle*, 896 F. Supp. 771, 773 (N.D. Ill. 1995). Thus, the plaintiff cannot recover damages for his placement in pre-hearing investigative segregation status.

The plaintiff has no viable cause of action against the defendant Thompson for improperly rejecting a grievance as untimely because her actions in no way prejudiced the plaintiff. By Minute Order of October 26, 2006, the court denied a motion for summary judgment filed by the defendants on grounds of non-exhaustion. The court specifically ruled that because one of the plaintiff's claims was that Stateville officials intentionally thwarted the grievance process, the court considered administrative remedies "unavailable" and excused the plaintiff from pursuing them further. *Id.* at p. 2, citing *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Consequently, Thompson's alleged malfeasance in no way inhibited the plaintiff's access to the courts or harmed this case.

The plaintiff's only claim against the defendant Wright is that she served on the adjustment committee panel that found him not guilty of the disciplinary report authored by Sanders. The court discerns no possible cause of action against Wright for exonerating the plaintiff, nor any duty on her

part to see that the plaintiff was released from the segregation unit following the dismissal of the charges.

In sum, the court finds that no material facts are in dispute and concludes that the plaintiff is entitled to summary judgment as a matter of law on most of his claims. The record nevertheless establishes that three of the defendants are themselves entitled to judgment.

As a final concern, a review of the court's docket reflects that certain defendants must be dismissed. In his complaint, the plaintiff named several "unknown" individuals ("unknown Administrative Review Board Hearing Person, "unknown Assist. Chairperson," "unknown Med Tech," etc.). Those defendants were never served, of course, and it is now too late for the plaintiff to identify the individuals in question. The statute of limitations for Section 1983 actions filed in Illinois is two years. *See* 735 ILCS § 5/13-202; *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001), citing *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). The plaintiff cannot avail himself of Rule 15(c)'s provisions allowing for "relation back" to the original complaint. In this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to replace John Doe defendants with named defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *see also Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). Consequently, the "unknown" defendants are terminated.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment [#91] is granted in part and denied in part. Summary judgment is granted in favor of the plaintiff on his claims against the defendants Robinson, Elberson, Davis, Kerl, Barnes, Gibson, Sanders, Muys, and Ruiz.

10

IT IS FURTHER ORDERED that the oral ruling date of December 19, 2006, at 9:00 a.m. is vacated. This case is set for a status conference on _____, 2007, to schedule a trial on the plaintiff's damages.

IT IS FURTHER ORDERED that the plaintiff's motion for judgment on the pleadings, with sanctions [#89], is denied as moot.

IT IS FURTHER ORDERED, on the court's own motion, that summary judgment is granted in favor of the defendants Martin, Thompson and Wright with regard to the plaintiff's claims against those three individuals.

IT IS FURTHER ORDERED that the Clerk terminate Unknown Administrative Review Board Hearing Person, Unknown Assistant Chairperson, unknown Med-Tech, Unknown Correctional Officer, and Med-Tech as defendants.

Enter: _____

HARRY D. LEINENWEBER
United States District Judge

Date: November 13, 2006