**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BOBBY FORD (#N-20126), | |
| Plaintiff, | Case No. 05 C 1780 |
| v. | |
| WARDEN CLARK, *et al.*, | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, a state prisoner (hereinafter, "Plaintiff"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Plaintiff claims that the Defendants, officials and health care providers at the Stateville Correctional Center, violated the Plaintiff's constitutional rights by conducting abusive strip searches, by using excessive force against him (or by failing to intervene when a fellow officer used unjustified force), by acting with deliberate indifference to his serious medical needs, and by subjecting him to cruel and unusual conditions of confinement. This matter is before the court for consideration of the parties' Cross-Motions for Summary Judgment. For the reasons stated herein, both parties' respective motions are denied.

## I. **STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F̲ED̲. R. C̲IV̲. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F.Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc. a Div. of Leggett & Platt, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, at 523 U.S. 1118 (1998).

## II. DISCUSSION

Because material facts are in dispute, both parties' motions for summary judgment must be denied. "At summary judgment, 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder.'" *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006), *quoting Payne v. Pauley*, 337 F.3d 767, 771-73 (7th Cir. 2003). A trier of fact must resolve the parties' conflicting accounts. As the sequence of events giving rise to this lawsuit are almost entirely in dispute, the parties' cross-motions for summary judgment must be denied in all respects.

### A. Count I

According to the Plaintiff, on July 19, 2004, Defendant Muys ("Muys"), an officer at the Stateville Correctional Center: (1) handcuffed the Plaintiff and told him to strip naked; (2) ordered him to bend over for a visual inspection of his rectum three times; (3) viciously attacked the Plaintiff when he asked to speak to a lieutenant about the successive and degrading searches; and (4) ignored the Plaintiff's requests for medical attention following the assault.

Muys has filed a counter-affidavit stating that he conducted the strip search "per protocol" and that the search was performed without incident. Muys denies ever touching the Plaintiff, let

alone using unjustified force, and maintains that there was a single visual inspection of the Plaintiff's rectum. The Court cannot decide these factual issues on summary judgment.

As discussed in prior orders, although prison strip searches are generally permissible, *see, e.g., Bell v. Wolfish*, 441 U.S. 520 (1979); *Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994), they must be performed in a "reasonable," non-abusive manner. *Bell*, 441 U.S. at 560, *Del Raine*, 17 F.3d at 1040. In this case, if a jury believes that the Plaintiff was required to submit to an inspection of his anus three times, and/or that a non-medical professional inserted his finger into the Plaintiff's rectum, the jury would most likely conclude that the strip search violated the Plaintiff's constitutional rights.

The Plaintiff may also be able to recover against Muys if it is to be believed that Muys attacked the Plaintiff for protesting the allegedly invasive strip search(es). Correctional officers have the right to use reasonable force against a prison inmate to enforce discipline and to maintain institutional security. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, it is well settled that the intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment violative of the Eighth Amendment. *Id.; Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, at *6 (N.D. Ill. May 14, 2003 (Manning, J.). Whenever

correctional officials stand accused of using excessive physical force in violation of the Constitution, "the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *quoting Hudson*, 503 U.S. at 6-7 (internal quotations omitted).  In this case, the trier of fact will have to assess whether Muys resorted to gratuitous violence, in violation of the Plaintiff's constitutional rights.

Defendant Robinson ("Robinson") likewise denies that he was aware of anyone using excessive force against the Plaintiff, denies that the Plaintiff ever requested medical attention, and denies that he ever threatened to mace the Plaintiff if he continued to kick his cell door.  Summary judgment is denied as to these contested issues.

The Plaintiff may also proceed against Defendants Robinson and Muys on his claim that they ignored his purported requests for needed medical attention.  Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).  Again, accepting the Plaintiff's account of his injuries as true, he may be able to obtain damages for the denial of necessary medical care.  Although Dr. Elyea's affidavit casts

doubt on the Plaintiff's claims of serious injuries, a jury must resolve the matter.

The fact that the Plaintiff's medical records do not substantiate his accusations does not necessarily defeat those claims. First, the Plaintiff specifically alleges that the various Defendants ignored his requests for medical attention. Obviously, if he was not permitted to see a health care provider, then his medical records would not reflect an injury. Second, an official who uses excessive force against a prison inmate may violate the constitutional prohibition on cruel and unusual punishment even if the prisoner does not suffer serious injury from the excessive force. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Third, even assuming that the Plaintiff cannot obtain compensatory damages in the absence of a showing of physical injury, *see* 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997), a jury might still potentially award punitive damages if it believes the Plaintiff's allegations concerning the defendants' conduct. *See, generally, Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995); *Balachowski v. Boidy*, No. 95 C 6340, 2000 WL 1365391, *13 (N.D. Ill. Sep. 20, 2000)(Guzmán, J.). It is conceivable that the Plaintiff could establish that he is entitled to compensatory and/or punitive damages. Summary judgment is denied as to both parties on Count I.

## B. Counts II and III

The Plaintiff maintains that on July 25, 2004, he was placed in a "condemned" cell that had a greasy floor and no lights or running water. After Defendant Ruiz ("Ruiz") closed the chuckhole door, cutting out all light, Defendant Elberson "Elberson" refused to open it again. Because the cell was "pitch black," the Plaintiff slipped and fell, injuring his left ear and spine. Elberson, Davis, and a never-identified medical technician subjected the Plaintiff to another invasive strip search, he says, causing pain and injury to his rectum. Afterwards, the Plaintiff was placed in another filthy segregation cell, his water was cut off, the mattress and toilet tissue were removed, and prison officials refused to feed him. Davis and other officers looked in on the Plaintiff and laughed at him on a number of occasions.

Again, the Defendants entirely dispute the Plaintiff's account. Elberson and Davis both claim that they have not and would not ever knowingly place any inmate in a cell that lacked working lights, running water, or a mattress. Elberson and Davis admit that it is prison policy to strip-search all inmates when they arrive in a new unit; however, the Defendants assert that the search was completed "without incident" after the Plaintiff initially balked at the strip search, and that there was no need for anyone to restrain the Plaintiff or place a finger in his

rectum. Elberson additionally states that on the single occasion the Plaintiff asked for medical attention, he immediately contacted the medical technician, who examined and treated the Plaintiff.

A jury may award the Plaintiff damages for his alleged placement in a "condemned cell." The Eighth Amendment, through the Due Process Clause of the Fourteenth Amendment, requires state prison officials to maintain "humane conditions of confinement," including adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement implicate the Eighth Amendment when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). A Plaintiff claiming a violation of the Eighth Amendment must satisfy both an objective test (whether the conditions can be considered cruel and unusual) and a subjective test (whether the defendants acted with a culpable state of mind). *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994).

Here, the Plaintiff's allegations arguably rise to the level of the extreme deprivations required to establish an objective violation of the Eighth Amendment. Being placed in a filthy, pitch-black cell that lacked running water, and being denied food, are unconstitutional privations. *Contrast Harris v.*

*Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992)(objective component met where prison conditions were "so strikingly reminiscent of the Black Hole of Calcutta"). The Plaintiff has also satisfied the subjective component in that he maintains that the defendants were aware of his conditions and even laughed at him.

Both parties' Motions for Summary Judgment are denied with respect to the Plaintiff's conditions claim. Summary judgment is also denied as to the Plaintiff's claims concerning another strip search and the denial of medical treatment, for the same reasons discussed in preceding paragraphs. Counts II and III must go to trial, assuming the parties do not reach a settlement agreement.

### C. Count IV

The Plaintiff charges that on October 28, 2004, Defendant Sanders ("Sanders") assaulted him for taking too long in the shower and for stating that he intended to file a grievance against the officer. Defendants Kerl ("Kerl") and Gibson ("Gibson") allegedly watched Sanders kick and punch the Plaintiff in his head, spine and ribs as he "screamed for mercy." Sanders then picked the Plaintiff up and slammed his head and face into a concrete walk, breaking his nose. Only then did Gibson tell Sanders to stop hurting the Plaintiff.

Afterwards, the officers forced the Plaintiff to stand at attention for hours. Because the officers denied the Plaintiff's repeated requests to use the bathroom, he soiled himself.

Defendant Barnes ("Barnes"), a medical technician, examined the Plaintiff but refused either to document his statements about what had transpired or to take the Plaintiff to the health care unit for treatment of his injuries. Barnes also disclosed the Plaintiff's HIV status to the officers.

Not surprisingly, Sanders, Gibson, and Barnes provide completely different accounts in their affidavits. According to Sanders, he had to forcefully remove the Plaintiff from the shower when he refused to leave even after being given additional time. The Plaintiff began banging his own head against the wall, telling the officer that he wanted to bleed on him because he had AIDS. Sanders denies ever kicking or punching the Plaintiff, cuffing him overly tightly, or slamming his head against the wall. Barnes, the medical technician, maintains that he cleaned a small cut on the Plaintiff's forehead–his only injury–and placed an adhesive bandage over it. Sanders also reports that the Plaintiff was in the bullpen only ten minutes, was not forced to stand at attention, and did not soil himself. Gibson corroborates Sanders' and Barnes' accounts.

Again, disputes as to material facts foreclose summary judgment as to either party. The defendants argue that the

Plaintiff's "self-serving" affidavit is insufficient to overcome their motion for summary judgment. However, the defendants' own affidavits are no less self-serving. In a case such as this of "he said/they said," the disputed issues of fact preclude summary judgment. "We have long held that a Plaintiff may defeat summary judgment with his or her own deposition." *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664-65 (7th Cir. 2006), *citing Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003); *Payne v. Pauley*, 337 F.3d 767, 771-73 (7th Cir. 2003)(evidence presented in a "self-serving" affidavit or deposition is enough to thwart a summary judgment motion provided it meets the usual requirements for evidence at summary judgment stage). With regard to the factual matters at issue, the Plaintiff's affidavits are based on his own personal knowledge and refer to events about which he is competent to testify. Even though three defendants offer a starkly different chronicle than that related by the Plaintiff, a jury may believe the Plaintiff's version of the events that took place.

Factual disputes additionally forestall summary judgment on the issue of exhaustion. The Plaintiff contends that he followed the rules established by the State governing form, timeliness and procedure of inmate grievances. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002). Prison officials' failure to respond to an inmate's grievances renders administrative remedies

"unavailable" and excuses the prisoner from pursuing them further. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

The Defendants seem to assert that the Plaintiff admitted in his deposition that he failed to finalize the grievance process with respect to the incidents of October 28, 2004. Certainly, a litigant may not create an issue of fact by stating facts that contradict his prior sworn testimony. *See, e.g., Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998). However, the Defendants failed to include a copy of the deposition transcripts in question. Furthermore, the Defendants' own characterization of the process was that the Plaintiff was transferred from IDOC custody to the Cook County Jail during the relevant time period. The Court questions whether IDOC grievance appeal procedures were available to the Plaintiff while he was incarcerated at a county jail; the Plaintiff specifically states that they were not. Accordingly, the Defendants' Motion for Summary Judgment on grounds of non-exhaustion must be denied.

For all of the foregoing reasons, the parties' Cross-Motions for Summary Judgment are denied. The facts giving rise to this lawsuit are almost entirely in dispute and the Court cannot resolve those disputes on summary judgment. Neither party has established either that no material facts are in dispute, or that

the respective movants are entitled to judgment as a matter of law.

### D. **Defendant Kerl**

As a final concern, in its Memorandum Opinion and Order entered December 13, 2006, the Court noted that defendant Kerl appeared to be in default. *See* Order at p. 6, n. 1. The Court's docket reflects that the Marshal filed an executed return of service as to Kerl on January 24, 2006. However, despite the Court's alert, Kerl has not entered an appearance, responded to the Complaint, or joined the Defendants' Motion for Summary Judgment (or brief opposing the Plaintiff's Motion for Summary Judgment). Accordingly, the Court finds Kerl in default. The Court will therefore accept as true that Kerl failed to intervene when a fellow officer used unjustified force and joined in compelling the Plaintiff to stand at attention "for hours" even as he urinated and defecated on himself. This matter will be set at a later date for "prove-up" of the Plaintiff's damages.

### III. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Plaintiff's Motion for Summary Judgment [#91] is denied;

2. Plaintiff's Motion to Rule on his Motion for Summary Judgment or, in the alternative, for Default Judgment [#125] is denied as moot;

3. Defendants' Motion for Summary Judgment [#139] is denied; and

4. Defendant Kerl is found to be in default. Default judgment will be entered against him.

**IT IS SO ORDERED.**

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Dated: April 18, 2007